UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JILLIAN R., § § Plaintiff, § § v. § § COMMISSIONER OF SOCIAL SECURITY, § § Defendant. § | Case # 1:20-cv-1735-DB MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Plaintiff Jillian R. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 12).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 9, 10. Plaintiff also filed a reply. *See* ECF No. 11. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 9) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 10) is **GRANTED**.

## BACKGROUND

On January 17, 2018, Plaintiff protectively filed applications for disability insurance benefits ("DIB") and child disability benefits ("CDB") under Title II of the Act, and SSI under Title XVI of the Act, alleging disability beginning June 30, 2004 (the disability onset date), due to: "(1) severe anxiety/depression, (2) ADHD, (3) Knee injury/torn ACL, and (4) herniated discs in lower back." Transcript ("Tr.") 16, 197-207, 215-16, 217-18, 240. The claims were denied

initially on January 18, 2018 and August 10, 2018 (Tr. 16, 69-84, 85-93, 105-09), after which Plaintiff requested a hearing (Tr. 117-18). On October 17, 2019, Administrative Law Judge Gina Pesaresi (the "ALJ") conducted a video hearing in Jersey City, New Jersey, Tr. 16. Plaintiff appeared and testified in Buffalo, New York, and was represented by Brianna Carroll, an attorney with the Law Offices of Kenneth R. Hiller. *Id*. Coleman K. Cosgrove, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

Prior to the October 17, 2019 hearing, Plaintiff amended the alleged onset date for her Title II and XVI applications to January 1, 2014. Tr. 16, 235. The ALJ found that, as a result, Plaintiff would not be entitled to benefits under Title II of the Act because she would not have disability insured status on the alleged date of onset. Tr. 16. 20 C.F.R. §§ 404.130, 404.131, 404.315. The ALJ also found that Plaintiff would not be entitled to child disability benefits because she was over the age of 22 on the alleged onset date. Tr. 16. 20 C.F.R. § 404.350(a)(5). The ALJ additionally noted that a request for hearing for an application for benefits may be dismissed if, at any time before the notice of the hearing decision is mailed, Plaintiff asks to withdraw the request. Tr. 16. 20 C.F.R. § 404.957(a). The ALJ noted that on October 1, 2019, Plaintiff was fully advised of the consequences of her request to amend her alleged onset date, including dismissal of the request for hearing regarding her Title II claim, with the result that the initial determination for this claim would become final. Tr. 16, 235. After discussing the issue with her attorney, Plaintiff indicated that she understood the implications of amending her alleged onset date and confirmed that she was proceeding solely with the SSI application. Tr. 16-17, 39-30, 235. Accordingly, the ALJ dismissed Plaintiff's DIB and CDB claims under Title II, and therefore, the ALJ's decision addresses only Plaintiff's SSI claim. Tr. 17.

The ALJ issued an unfavorable decision on November 25, 2019, finding that Plaintiff was not disabled. Tr. 16-27. On September 30, 2020, the Appeals Council denied Plaintiff's request

for further review. Tr. 1-6. The ALJ's November 25, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her November 25, 2019 decision:

1. The claimant has not engaged in substantial gainful activity since January 1, 2014, the amended alleged onset date (20 CFR 404.1571 et seq., and 416.971 *et seq*.).

2. The claimant has the following severe impairments: attention deficit hyperactivity disorder ("ADHD"), major depressive disorder, post-traumatic stress disorder ("PTSD"), substance abuse disorders in remission; left-knee status post ACL repair (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 416, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b)[1] except she can perform no kneeling, crawling or crouching, and she is limited to simple work with only occasional interaction with coworkers and supervisors, and never with the public.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on February 20, 1985 and was 19 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, from the application date of January 17, 2018, through the date of this decision (20 CFR 416.920(g)).

Tr. 16-27.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits protectively filed on January 17, 2018, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act. Tr. 27.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

## ANALYSIS

Plaintiff essentially asserts a single point of error challenging the ALJ's evaluation of the opinion evidence. *See* ECF No. 9-1 at 9-14. Specifically, Plaintiff takes issue with the ALJ's finding that the opinions of treating mental health providers Gerianne Wasinger, LCSW ("Ms. Wasinger"), and Joan Canozeri, PNP ("Ms. Canozeri"), were not persuasive. Tr. 25. *See id*. Plaintiff also argues that there was no opinion to support the social interaction limitations included in the RFC, because the ALJ found the opinions of consultative psychologist Susan Santarpia, Ph.D. ("Dr. Santarpia"), and state agency reviewing psychologist S. Juriga, Ph.D. ("Dr. Juriga"), that Plaintiff had no more than mild mental limitations, only partially persuasive. *See id*. at 11-14. Accordingly, argues Plaintiff, the RFC was unsupported by substantial evidence.[2] *See id*. at 9-14.

In response, the Commissioner argues that the ALJ properly relied on the medical opinions and other evidence of record in support of the mental portion of Plaintiff's RFC finding, including the opinions of Dr. Santarpia and Dr. Juriga. *See* ECF No. 10-1 at 13-18. Additionally, argues the Commissioner, Plaintiff's argument fails because the ALJ found that Plaintiff had greater limitations than provided by either psychologist, which was not error. *See id*.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The

---

[2] The Court notes that Plaintiff does not challenge the physical portion of ALJ's RFC finding. *See generally* ECF No. 9-1. Because Plaintiff does not challenge these findings in her brief, the Court declines to address these issues in this opinion. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal); *see also Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ properly considered the medical opinion evidence and the other evidence of record, and the ALJ's finding that Plaintiff was capable of performing light work with certain limitations was supported by substantial evidence. Accordingly, the Court finds no error.

Plaintiff's record shows a history of mental health treatment, including treatment for substance abuse. On August 27, 2015, Plaintiff was admitted for substance abuse treatment at Horizon Corporations ("Horizon"). Tr. 496, 1224. She was discharged less than one month later on September 7, 2017, with a diagnosis of opioid use disorder, alcohol use disorder, and cocaine use disorder. Tr. 496. She was admitted to substance abuse treatment at Horizon again on October 2, 2015, with similar diagnoses. Tr. 578. On October 22, 2015, Plaintiff reported that she had used crack, marijuana, and alcohol, but she had not honestly reported her usage during her October 2, 2015 visit. Tr. 1224. The treatment records indicate that she was largely abstinent from October 2015 until at least September 2017, when she was discharged from the program, except for one mild relapse in November 2015. Tr. 579. The discharge summary from September 2017 notes that Plaintiff appeared to have the skills necessary to maintain her recovery. Tr. 579-81. The report also notes that Plaintiff was working and was active in sober social activities. *Id*.

The record also shows regular treatment for several years prior to the alleged onset date with psychiatrist Qasim S. Jaffri, D.O. ("Dr. Jaffri"), although the record indicates a gap in treatment from approximately June 2013 until November 2016, due to insurance issues. Tr. 653, 656. When she resumed treatment with Dr. Jaffri in November 2016, Plaintiff reported she had voluntarily relinquished custody of her two older children to her mother, but she had recently given birth to a baby, who was in her care. Tr. 656, She also reported she had recently enrolled in

7

cosmetology school and felt she was doing "much better." *Id*. She reported some ongoing symptoms of depression, but also reported her attention deficit disorder symptoms were controlled, and that her spirits and mood were good. *Id*.

Upon mental status examination, Dr. Jaffri found Plaintiff was pleasant and cooperative, with good hygiene, and made good eye contact. Tr. 658. She was fully oriented and her recent and remote memory were intact. *Id*. She reported intermittent distractibility at times, but she stated that her "cravings [were] quite well controlled." *Id*. Dr. Jaffri decided to continue Plaintiff on her current medications for depression, anxiety, and attention deficit disorder, as "she [was] doing well." Tr. 659. He also decided to start tapering her Suboxone. *Id*. At follow-up visits thereafter in 2017 and 2018, Dr. Jaffri consistently noted partial relief of symptoms with no side effects to medications, and normal and stable mental status findings. Tr. 658, 664, 670, 697, 854-56, 862-64, 868, 870-72. He also noted some tardiness to appointments and non-compliance with the drug testing routine at times; because of this, he could not write prescriptions for Suboxone and Ritalin. Tr. 877.

Dr. Santarpia administered a psychiatric evaluation on May 17, 2018. Tr. 724-28. Plaintiff reported having driven herself to the examination, and she was working part-time as a caregiver for her father, who was ill. Tr. 724. She reported some ongoing symptoms of depression, but she reported medication was helping. Tr. 725. Upon mental status examination, Dr. Santarpia found that Plaintiff was cooperative; her manner of relating and her overall presentation were adequate; and she was well groomed with appropriate eye-contact. *Id*. Dr. Santarpia also documented normal speech, thought processes, intact attention, concentration and memory, average cognitive functioning, and fair insight and judgment. Tr. 726. She opined that Plaintiff would have no significant mental limitations. Tr. 727.

On May 13, 2019, Plaintiff was evaluated by a psychologist C.J. Pino, Ph.D. "Dr. Pino"), complaining of symptoms of attention deficit disorder. Tr. 738. Plaintiff reported that she was easily distracted by noise, and she had attention problems which had gotten progressively worse since childhood. Tr. 733. She also reported having frequent panic attacks in the past, which had resolved; however, she continued to have problems with reading comprehension. *Id*. Dr. Pino noted that Plaintiff's mental status examination was "within normal range," but she felt distracted and disorganized. *Id*. He also administered the Copeland Adult ADD checklist and found that Plaintiff met the criteria for ADHD type. *Id*. Dr. Pino indicated he was going to write to Plaintiff's psychiatrist regarding a trial of Adderall. *Id*.

On August 1, 2019, Plaintiff had an initial psychiatric assessment with Yogesh Bakhai, M.D. ("Dr. Bakhai").  Tr. 1148-50. Dr. Bakhai noted that Plaintiff was late for the appointment, and she reported feeling poor motivation. Tr. 1148. She reported sleeping excessively and not cleaning her apartment, as well as difficulties with focus and concentration. *Id*. Upon mental status examination, Dr. Bakhai noted a normal appearance and speech, cooperative attitude, appropriate behavior, anxious mood and affect, organized and goal-directed thought processes, normal associations, no perceptual disturbances, good judgment, fair insight, and intact concentration. Tr. 1149.

On October 15, 2019, therapist Ms. Wasinger and psychiatric nurse practitioner Ms. Canozeri jointly submitted a mental residual functional capacity questionnaire. Tr. 1141-47. They had seen Plaintiff since May 31, 2019, after she successfully completed chemical dependency treatment. Tr. 1141.  The report notes that Plaintiff recently scored highly on the PHQ-9, indicating severe depression symptoms, and she scored 64 on the PCL-5, indicating active, severe PTSD. *Id*. They also noted that obsessive compulsive disorder was being ruled out, as Plaintiff "struggled with checking behaviors that interfere with timeliness." *Id*. Because Ms. Wasinger and Ms.

9

Canozeri had not been able to observe Plaintiff in a work setting or in public, they could not opine on her functional limitations in these areas. Tr. 1144. However, they opined that she would be absent from work more than four days per month. Tr. 1146.

As noted above, Plaintiff challenges the ALJ's consideration of the opinion evidence and her overall RFC finding. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required."

10

*Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed her claim on January 17, 2018, and therefore, the 2017 regulations are applicable to her claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a

claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC, and substantial evidence supports the ALJ's RFC assessment. *See* 20 C.F.R. §§ 404.1527, 416.927. Plaintiff first argues that the ALJ's RFC finding is not supported by substantial evidence because the ALJ found that Plaintiff had greater limitations than either Dr. Santarpia or Dr. Juriga opined. *See* ECF No. 9-1 at 11-14. Although both Dr. Santarpia and Dr. Juriga found no more than mild mental limitations, the ALJ found these assessments only partially persuasive because the overall record,

13

including reports of continued symptoms, reflected more severe mental impairments that would impose some limitations. Tr. 25.

According to Plaintiff, because there was no opinion to support the social interaction limitations included in the RFC, the ALJ impermissibly relied on her own lay opinion in assessing Plaintiff's RFC. *See* ECF No. 9-1 at 11-14. Contrary to Plaintiff's argument, however, the ALJ was not required to rely on an opinion that mirrored the RFC. Plaintiff's argument wrongly presumes that RFCs are medical determinations, and thus, outside the ALJ's expertise, but as explained above, RFC is an administrative finding, not a medical one. Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56). The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding that [is] dispositive of the case." 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, the regulations direct the ALJ to weigh a medical source opinion by evaluating the extent to which the source of the opinion has presented evidence, "particularly medical signs and laboratory findings," to support the opinion. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

Moreover, an ALJ may formulate an RFC absent any medical opinions. "Where, [ ] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted) (ALJ's decision supported by other evidence despite rejecting the only medical opinion in the record); *see also Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019). Here, the ALJ based the RFC finding on the overall record, and the Court finds that it is supported by substantial evidence.

As noted above, both Dr. Santarpia and Dr. Juriga opined that Plaintiff had no more than mild mental limitations. Tr. 25, 75-76, 727. Generally, if a claimant has no more than mild mental limitations, that claimant does not have a severe mental impairment. 20 C.F.R. § 416.920a(d)(1) (If the degree of limitation in the ability to understand, remember or apply information; interact with others; concentrate, persist or maintain pace; and adapt or manage oneself, is rated none or mild, then the ALJ will generally conclude that the claimant's mental impairment is not severe and will deny benefits at step two). Indeed, Dr. Juriga concluded that Plaintiff did not have a severe mental impairment. Tr. 75-76. Despite the psychologists' opinions, based on the overall record, at step two, the ALJ found that Plaintiff had severe mental impairments. Tr. 19.

When determining Plaintiff's RFC, the ALJ discussed Dr. Santarpia and Dr. Juriga's opinions and explained how she considered the two most important factors of supportability and consistency in finding their opinions to be only partially persuasive. Tr. 25. *See* 20 C.F.R. § 416.920c(b)(2) (The ALJ will explain how she considered the factors of supportability and consistency, which are the two most important factors in determining the persuasiveness of a medical source's medical opinion or a prior administrative medical finding); 416.920c (c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion . . . the more persuasive the medical opinion . . . will be."); 416.920c (c)(2) ("The more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be.").

As the ALJ noted, the opinions were supported by Dr. Santarpia's largely normal mental status findings, including a cooperative attitude, normal appearance, speech, and thought processes, intact attention, concentration and memory, average cognitive functioning, and fair insight and judgment. Tr. 25, 725-26. The ALJ also found these assessments were generally

15

consistent with Plaintiff's reports of at least partial relief of symptoms with treatment, with no side effects to medications, and normal and stable mental status findings found in the treatment records. Tr. 25, 49, 658, 664, 670, 697, 706-07, 710-11, 798, 854-56, 862-64, 868, 870-71.

The ALJ additionally explained that these reports were generally consistent with Plaintiff's descriptions of her daily activities. Tr. 25. An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole. *See* 20 C.F.R. § 404.1529(c)(3)(i); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)). Plaintiff cared for her baby, cleaned her home, helped her father with laundry and cleaning and was his caregiver, drove, shopped in stores and online, was able to manage money, watched television, and was able to get along with others and follow instructions. Tr. 47, 256-63, 688, 696, 698, 711, 720, 727.

Nevertheless, the ALJ declined to adopt Dr. Santarpia and Dr. Juriga's opinions wholesale. Tr. 25. The ALJ concluded that, overall, she agreed with Dr. Santarpia and Dr. Juriga that Plaintiff's mental impairments were not disabling. Tr. 25. However, the ALJ explained that the record reflected some reports of continued symptoms, showing Plaintiff's "mental impairments are severe and would impose some limitations." Tr. 25.

Despite the fact that no physician opined on Plaintiff's social interaction limitations, the ALJ reasonably gave Plaintiff the benefit of the doubt by limiting her to simple work with only occasional interaction with coworkers and supervisors, and never with the public. Tr. 21. *See Ellen A. v. Saul, Comm'r of Soc. Sec.*, No. 19-CV-1299F, 2021 WL 1087949, at *4 (W.D.N.Y. Mar. 22, 2021) (finding no error where based upon a review of the medical evidence and opinions of record, as well as the ALJ's observation of the Plaintiff at the administrative hearing, the ALJ determined

the plaintiff's severe impairments posed greater limitations than contained in the medical opinions of record); *Kirkland v. Colvin*, 15-cv-6002, 2016 WL 850909, *12 (W.D.N.Y. Mar. 4, 2016) (finding that the ALJ did not err by assessing specific limitations that did not precisely correspond to any medical opinion because the plaintiff's daily activities, treatment history, and consultative examiner's evaluation supported those limitations); *Wilson v. Colvin*, No. 6:16-cv-06509-MAT, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) ("Furthermore, the fact that an RFC assessment does not correspond exactly to a medical expert's opinion in the record does not mean that the RFC assessment is 'just made up'").

Furthermore, Plaintiff fails to show how she was harmed by the ALJ finding greater mental limitations than opined by Dr. Santarpia and Dr. Juriga. Even though this limitation was not based on a medical opinion, it was favorable to Plaintiff. Although Plaintiff posits, "[w]ho is to say then that Plaintiff can occasionally interact with coworkers and supervisors as opposed to less than occasional?" (*see* ECF No. 9-1 at 13), Plaintiff has not shown that she required a more restrictive limitation, as was her burden. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (explaining that plaintiff had a duty to prove a more restrictive RFC than the ALJ found). Based on the evidence discussed above, the ALJ reasonably found that Plaintiff retained the ability to perform simple work with only occasional interaction with co-workers and supervisors, and never with the public. Tr. 21, 25. Thus, Plaintiff's argument that the ALJ's RFC was based upon lay opinion simply because it did not mirror a medical opinion is meritless.

Plaintiff also argues that the ALJ failed to incorporate any limitation as to Plaintiff's off-task time or absenteeism in the RFC, arguing that "the record shows Plaintiff has a serious issue with both due to her mental health impairments." *See* ECF No. 9-1 at 13. According to Plaintiff, the RFC should have included an off-task limitation because she lacked energy and motivation, slept excessively, and had a hard time getting up for her appointments. *See id*. at 14. However, the

ALJ was not required to include an off-task limitation merely based on Plaintiff's self-reports. *See Joycelyn A. C. v. Comm'r of Soc. Sec.*, 2022 WL 605736, at *6 (N.D.N.Y. Feb. 7, 2022), *report and recommendation adopted sub nom. Jocelyn Ann C. v. Comm'r of Soc. Sec.*, No. 6:20-CV-1200, 2022 WL 602650 (N.D.N.Y. Mar. 1, 2022) (rejecting plaintiff's argument that the ALJ should have included further RFC limitations based on her emotional regulation difficulties because plaintiff failed to cite any evidence to support her assertion that those difficulties impose functional restrictions aside from her own reports).

Notably, the ALJ considered the October 2019 mental RFC questionnaire completed by Ms. Canozeri and Ms. Wasinger, indicating that Plaintiff struggled with timeliness to early appointments and opining that she would be absent from work more than four days per month. Tr. 25, 1141-47. The ALJ found the report not persuasive. Tr. 25. *See* 20 C.F.R. §§ 416.920c(b)(2), (c)(1), (c)(2). As a preliminary matter, the ALJ noted that the report failed to identify any specific work-related mental limitations, and Ms. Canozeri and Ms. Wasinger indicated insufficient observation of Plaintiff to make these determinations. Tr. 25, 1144-45. As the ALJ explained, overall, there was little support in the record for these limitations. Tr. 25. The ALJ also observed that while the report identified uncontrolled symptoms of depression and PTSD, this was inconsistent with treatment records consistently noting at least partial relief of symptoms and consistently normal and stable mental status findings, as well as inconsistent with Plaintiff's description of her daily functioning, as discussed above. Tr. 25, 1141-42. Ultimately, the ALJ reasonably concluded that the nature of the treating relationship between Plaintiff and these providers, in and of itself, was insufficient to overcome the inconsistencies with the other evidence discussed throughout the ALJ's decision and noted above. Tr. 25.

The ALJ acknowledged that the record contained some positive clinical findings but based on the evidence, she reasonably concluded that Plaintiff was capable of performing light work with

some limitations. The fact that the record contains some positive findings or opinions does not undermine the ALJ's decision that Plaintiff could perform the mental aspects of simple, unskilled work with social interaction limitations, where, as here, there is also evidence to support the ALJ's conclusion.

Ultimately, it is Plaintiff who bears the burden of demonstrating functional limitations that preclude performance of any substantial gainful activity. *See* 20 C.F.R. § 416.945(a)(3) (the claimant is responsible for providing the evidence used in the RFC determination); *see Poupore*, 566 F.3d at 305-06 (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.). Plaintiff here failed to meet her burden of proving that no reasonable factfinder could have reached the ALJ's findings on this record.

As detailed above, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the evidence of record, including the medical opinion evidence, the treatment notes, and the objective findings, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE